UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

YAN BARSHAY,

                    Plaintiff,                          Docket No.

                                                        <u>COMPLAINT</u>

          -against-


MAHESH NAITHANI,

                    Defendant.
------------------------------------------------------x

      Yan Barshay, plaintiff, through his legal counsel, Gregory A. Sioris, Esq., complains of the defendant as follows:

## <u>NATURE OF THE COMPLAINT</u>

1.      Plaintiff sues for $250,000.00 which sum remains unpaid from a $300,000.00 debt defendant promised to pay plaintiff in 2018.   Defendant has acknowledged and ratified his debt to plaintiff on several occasions, even through defendant made partial payment to plaintiff through his sole member limited liability company as recited herein.

## <u>JURISDICTION AND VENUE</u>

2.      This action is brought for the repayment of a debt and to deny defendant from being unjustly enriched as a result of failing to repay the $250,000.00 owed plaintiff.  This Court has jurisdiction based on 28 U.S.C. sections 1332 and the common law of the State of New York.

3.      Venue is properly placed in the Southern District of New York under 28 U.S.C. section 1391 since a substantial part of the complained of acts and omissions occurred within New York County.

## **BACKGROUND OF THE DISPUTE**

4.      Plaintiff asserts claims against the defendant for breach of contract, breach of fiduciary duty and unjust enrichment based on defendant's failure to repay in full the debt owed plaintiff.

5.      Defendant as of the date of this complaint ignores several written promises and representations made to plaintiff that he will repay the debt, which compel plaintiff to file this complaint to seek judgment for the balance owed together with lawful interest.

6.       Plaintiff is a resident and domiciliary of New York County and the complained of acts recited herein occurred in New York County.

7.      As of October 19, 2019 defendant moved to California, but upon information and belief continues to transact and/or actively do business in New York County on an ongoing basis.  The nature of defendant's business is creating and licensing medical science databases.

8.      Plaintiff, Yan Barshay, works as an executive in the medical information industry, which collects and commercially disseminates medical data to the pharmaceutical industry.  Plaintiff since November 2005 was employed by Medmeme LLC **in** Manhattan as an executive vice president until the assets of Medmeme LLC were acquired by Inflexion Private Equity Partners during October 2019.

9.      Defendant Mahesh Nathani upon information and belief is or was the sole member of Medmeme LLc, a Delaware limited liability company, licensed to do and doing business in New York.  Medmeme LLC changed its name to Pharmaspectra LLC in 2018.  Both entities trade in the dissemination of medical data and information to the pharmaceutical industry.

10.     Defendant held the position of Chairman at Medmeme/Pharmaspectra, prior to its acquisition by Inflexion Private Equity Partners (Inflexion).  Plaintiff held the position of Executive Vice President at Medmeme from 2005 until its assets were sold in 2019 to Inflexion.

## STATEMENT OF THE FACTS

11.     The parties have been doing business together since at least 2000 when they worked together in the pre-paid telephone business.   Since that time, a relationship and duty of loyalty, trust and fair dealing has resulted between them based on several business ventures they have been involved in and plaintiff's long terms employment at defendant's firm Medmeme since 2005.

12.     During August 2000, defendant solicited, and plaintiff assisted defendant, in securing a loan of one hundred thousand dollars ($100,000.00) from lenders Alexander Narod and Val Napadov. The loan's terms are memorialized in an agreement between defendant and these lenders.  The monies were used to cover a short term cash flow gap in order to keep the business of Ibex Telecom operational.

13.     As per the terms of the loan agreement, defendant made ongoing monthly interest payments only.   The loan's principal amount remained unpaid and was settled as the final payment to discharge the entire debt amount.

14.     The defendant could not pay the principal of this loan.  Plaintiff, based on their business relationship and the personal relationship arising from it, on or about April 3, 2003, at the defendant's request, paid the defendant's lenders the outstanding principal sum of $100,000.00 thereby settling defendant's debt in full.  Defendant agreed at that time he would re-pay plaintiff the entire amount of the loan plus interest.  The agreement to re-pay the $100,000.00 together with interest is oral, the parties comfortable about doing business in this manner since they were dealing in an ongoing course of dealing and business relationship.

15.     On or about December 4, 2004 defendant filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Southern District of New York.  In his petition to the Bankruptcy Court, defendant sought relief from liabilities totaling $3,159,214.91.

3

16.     Defendant did not list plaintiff as a creditor or referenced the debt plaintiff settled on the

defendant's behalf, with defendant's financial obligations toward plaintiff remaining outside the

bankruptcy court's jurisdiction and not subject to discharge, thereby remaining in full force and

effect.  The defendant received a final Order of discharge from the Bankruptcy Court on January 20,

2006.

17.     On October 15, 2016 by check number 1969 drawn on Medmeme's account at the Bank of

America defendant paid plaintiff $90,000.00 on account of the loan and interest plaintiff settled on

defendant's behalf in April 2003.  On the check's "Memo" line situated at the bottom left of this

instrument, written by hand is "Loan" which is prominently displayed.

18.     Defendant has acknowledged his debt to plaintiff on an individual basis on numerous

occasions.  On January 18, 2018 the parties met and verbally agreed that defendant's overall debt to

plaintiff totals $300,000.00.

19.     Defendant reaffirmed and ratified his debt to plaintiff by making a partial payment against

the $300,000.00 on January 18, 2018 in the amount of $50,000.00 by check number 1130 drawn

again on Medmeme LLc's account at the Bank of America.  Similar to Medmeme's earlier check

1969 on the check's "Memo" line situated at the bottom left of this instrument, "Loan" is

handwritten and is prominently displayed.  Plaintiff confirms that the signature on the face of the

check is that of Rellie Seville, an accountant at Medmeme who defendant directed to pay plaintiff

the $50,000.00.  Plaintiff's receipt of payment confirms the existence and validity of defendant's

remaining debt reduced to $250,000.00 which amount to date remains due and owing.

20.     It appears that defendant used Medmeme to pay for his individual obligations which arose

suspicions within the Internal Revenue Service (IRS).  This resulted in the IRS raiding Medmeme's

offices and the defendant's apartment during May 2015 but defendant apparently continued this practice with the payments made to plaintiff as referenced herein.

21.     On May 3, 2019 a meeting was held at the Medmeme/Pharmaspectra offices on the fifth floor at 1359 Broadway, Manhattan, with regard to the sale of Medmeme's assets and to address issues arising from the prospective buyer's due diligence.  Attending the meeting were plaintiff, Medmeme's accountant Rellie Seville, Jez Moulding, chief executive officer of Pharmaspectra LLC and Pharmaspectra's attorney Anjali Vorha, Esq..

22.     At this meeting plaintiff requested that defendant's $250,000.00 debt be added to seller Medmeme's liabilities since defendant used Medmeme twice to pay plaintiff for defendant's personal debts.  Plaintiff, after speaking with Jez Moulding, withdrew his request that his debt be added to Medmeme's liabilities and agreed to accept payment from directly from the defendant and not Medmeme after the asset transaction closed.  Plaintiff provided this accommodation in order for the transaction to proceed without delay, particularly since defendant was going to reap a windfall from the sale's proceeds and could easily pay plaintiff his outstanding debt of $250,000.00.

23.     Upon information and belief the transaction closed October 4, 2019 with all of the assets of Medmeme and Pharmaspectra selling for $100,000,000 of which $50,000,000.00 was paid in cash on or about this October date, with the balance paid based on the future performance of the sold assets as memorialized in the sales agreement.

24.     Upon information and belief defendant is owed or may have actually received $41,190,280 for Medmeme's asset sale.  It is believed defendant provided Medmeme's buyer a loan of $5,000,000 toward the purchase price and $6,500,000 has been placed in escrow to settle tax obligations and other liabilities connected to the sale.  In addition it is believed that $1,320,000 is due or has been received by defendant in India which he seeks not to disclose.  It is believed further

after these and likely other deductions, defendant received a final payment of $28,370,280, more or less, from the asset sale with additional monies being paid to him either directly or through third persons on his behalf in the future as part of the sale price.

25.     The sales transaction having successfully closed, the parties hereto met for breakfast at the Four Seasons Hotel in Manhattan on October 14, 2019.  At the meeting defendant reassured plaintiff that he would personally pay him $250,000.00 owed to settle his debt as soon as defendant received his initial proceeds from the sale.

26.     Consistent with defendant's representation on October 14, 2019 that he would pay plaintiff $250,000.00, plaintiff emailed defendant on October 30, 2019 confirming the agreed to amount of $250,000.00, "Last summer you stated that you would pay me $300,000 of which you have paid $50,000, which brings the balance to $250,00.00".

27.     Defendant responded to plaintiff's October 30, 2019 email stating "I will calculate all this and figure out the rest of the payments. . . When I declared the bankruptcy I also got rid of my obligations but you know I don't shy away from my responsibilities.  Let me do the final calculations for which I have to get Rellie [Seville, Medmeme's accountant] involved which I will do soon".

28.     As of the date of this complaint, defendant has not challenged the fact his debt to plaintiff is $250,000.00.  Mr. Seville has failed to provide "final calculations" which defendant promised in his October 30, 2019 email to plaintiff.  As of the date of this complaint, defendant has failed to discharge any portion of his remaining $250,000.00 debt to plaintiff.

29.     In addition to the $50,000.00 payment referenced herein, defendant has made further admissions confirming his debt.  Responding to plaintiff's email dated November 19, 2019, "Also I wanted to follow up on the loan repayment topic, as you know it has become a very urgent issue for

me", defendant responded on the same date ". . .I will let you know about the payments" but to date neglects providing further information regarding "the payments".

30.     On November 26, 2019 plaintiff writes defendant, "Regarding my personal loan.  I don't think it's fair that it [repayment] is being mixed with Medmeme/Pharmaspectra business transactions.  I loaned the money to you years before Medmeme was formed and it should not be mixed".

31.     On November 26, 2019 defendant answers and speaks of telling his accountants "to finalize the numbers. . . Based on that number we can then finalize".  Contrary to defendant's statement, his accountants neglect to "finalize the numbers", the debt's calculation being straightforward and not in need of an accounting analysis.   Upon information and belief, defendant's claim of involving accountants is a tactic to delay in order to ultimately avoid re-paying his debt.

32.     On December 16, 2019 plaintiff writes defendant, "I can't wait another two weeks for money that I loaned to you 20 years ago to be re-paid to me.  I really need to get this re-payment now".

33.     On December 20, 2019 plaintiff again writes "As I explained to you before, I desperately need the money now and I am asking you again to separate our personal transactions with the business ones and repay your debt to me before the end [of] this year, so I can take care of my family".

34.     Defendant as of the date of this complaint, has not responded to plaintiff's emails dated December 16 and 20, 2019, nor made further payment against his remaining debt of $250,000.00 prompting the filing of this suit.

## AS AND FOR A FIRST CLAIM
### (Breach of Agreement and Promise)

35.    Plaintiff repeats and realleges paragraphs 1 through 34.

36.    Defendant agreed and promised to pay plaintiff $300,000.00, as ratified and confirmed by the partial payment of $50,000.00 through Medmeme at the defendant's direction.  The acknowledgement on the face of Medmeme's check to plaintiff unequivocally states the payment is for a loan.  This check, in addition to further correspondence exchanged between the parties clearly evidences defendant's indebtedness to plaintiff.  Plaintiff seeks judgment against the defendant for the remaining monies due plaintiff in the amount of $250,000.00 as agreed to by defendant.

37.    Defendant is well aware of his debt to plaintiff which he chooses to ignore or otherwise put off.  Defendant is well aware that this outstanding amount was communicated to Medmeme's accountants, with accountant Rellie Seville being specifically named in defendant's email to plaintiff dated October 30, 2019 and very likely to other third persons connected to Medmeme's asset sale who can most likely substantiate both the outstanding debt amount and the $50,000.00 partial payment made against it.

## AS AND FOR A SECOND CLAIM
### (Breach of Fiduciary Duty)

38.    Plaintiff repeats and realleges paragraphs 1 through 38.

39.    The parties hereto have done business together for many years and by doing so a great deal of trust and loyalty was reposed by plaintiff towards defendant and *vice versa*.  A clear manifestation of this trust is defendant not listing plaintiff as a creditor in his bankruptcy so that his debt to plaintiff remains enforceable and not subject to discharge as part of the relief sought through bankruptcy.  Based on the trust plaintiff reposed in defendant, plaintiff took defendant at his word

regarding defendant's promise that he, individually, would re-pay plaintiff, especially when considering the partial payment of $50,000.00 which ratifies his debt to plaintiff .

40.     As a result of the parties' long term dealings where trust is reposed between them, a fiduciary relationship arose.  For defendant to now fail to re-pay plaintiff the remaining $250,000.00 debt owed results in a breach of the defendant's fiduciary duty toward plaintiff.

41.     Plaintiff seeks judgment in the sum of $250,000.00 together with any further relief the Court finds just and proper in this situation, such as defendant undertaking the payment of plaintiff's reasonable attorney's and witness fees to prosecute this claim, as such fees are allowed under New York law.

**AS AND FOR A THIRD CLAIM**
**(Unjust Enrichment)**

42.     Plaintiff repeats and realleges paragraphs 1 through 42.

43.     The defendant's failure to re-pay plaintiff the $250,000.00 he owes results in defendant becoming unjustly enriched.  By making a $50,000.00 partial payment and by confirming his debt obligation to plaintiff, including the promise to get defendant's accountant involved to pay plaintiff, plaintiff properly seeks judgment against defendant for $250,000.00 so that an undeserved and unjust financial windfall is not taken by defendant.

To the extent possible, plaintiff seeks a trial by jury of the claims stated herein.

**WHEREFORE**, plaintiff prays for judgment in the sum of $250,000.00 together with his costs, lawful interest and reasonable counsel fees together with whatever other and further relief this Court deems just and proper as based on the circumstances as stated herein.

Dated:   New York, NY
         October 14, 2020

Gregory A. Sioris
Attorney for Plaintiff
303 Fifth Avenue, Suite 506
New York, NY 10016-6644
(212)840-2644

**To:**   Mahesh Naithani
       Defendant
       1003 N. Beverly Drive
       Beverly Hills, CA 90210