UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAN BARSHAY,

                              Plaintiff,

                    -v.-

MAHESH NAITHANI,

                              Defendant.

20 Civ. 8579 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Yan Barshay brings this action for breach of contract, breach of fiduciary duty, and unjust enrichment, alleging Defendant Mahesh Naithani's failure to satisfy a debt that has been owed to Plaintiff for nearly 19 years. Defendant has moved to dismiss the Amended Complaint on the bases that Plaintiff's claims (i) are barred by a release that ostensibly covered Defendant's repayment obligations; (ii) were discharged by Defendant's bankruptcy proceedings; (iii) are time-barred; and (iv) fail to state any valid causes of action. For the reasons that follow, the Court grants Defendant's motion to dismiss the Amended Complaint, though it will consider an application for leave to replead.

## BACKGROUND[1]

### A.  Factual Background

#### 1.    The Parties

Plaintiff Yan Barshay, a citizen of New York, and Defendant Mahesh Naithani, a citizen of California, have been conducting business together since at least the year 2000, when they worked together at Ibex Telecom, a business venture in the pre-paid telephone card space located in New York City.  (Am. Compl. ¶¶ 6, 7, 11).  From 2005 to 2019, Plaintiff was employed as a senior executive at Medmeme LLC, where Defendant held the position of President. (*Id.* at ¶ 8).

#### 2.    The Loan and Subsequent Efforts to Collect Payment

Plaintiff alleges that in August 2000, Defendant asked Plaintiff to assist him in securing a $100,000 loan from lenders Alexander Narod and Val Napadov (together, the "Lenders"), with whom Plaintiff was personally acquainted.  (Am. Compl. ¶ 12).  Per the terms of Defendant's loan agreement with the Lenders, Defendant was to make monthly interest payments; but in

---

[1]     This Opinion draws its facts primarily from the Amended Complaint (Dkt. #12 ("Am. Compl.")), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court also considers Defendant's bankruptcy petition, which is a matter of public record that is a proper subject for judicial notice.  (Dkt. #19-2 ("Bankruptcy Petition")).  *See Kramer* v. *Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings.").  The Court's ability to consider other materials submitted by the parties in connection with this motion is discussed *infra*.

For ease of reference, the Court refers to Defendant's memorandum of law in support of his motion to dismiss as "Def. Br." (Dkt. #17); Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #18); and Defendant's reply memorandum as "Def. Reply" (Dkt. #23).  The Court also considers certain exhibits attached to the declarations of Plaintiff ("Barshay Decl." (Dkt. #19)) and Defendant ("Naithani Decl." (Dkt. #16)).

late March 2003, Plaintiff advised Defendant that the Lenders were pressuring Plaintiff to pay down Defendant's debt.  (*Id.* at ¶¶ 12-13).  On or about April 3, 2003, at Defendant's request, Plaintiff paid the Lenders the outstanding principal sum of $100,000, thereby settling Defendant's debt in full.  (*Id.* at ¶ 14).  Plaintiff alleges that at the time he paid off the loan, Defendant orally agreed to repay Plaintiff "the entire amount of the settled loan plus interest on it" (the "Oral Agreement").  (*Id.*).  On numerous occasions during 2003 and 2004, Defendant told Plaintiff he intended to sell Ibex Telecom and start a new business in the pharmaceutical industry, at which time he would repay Plaintiff.  (*Id.* at ¶ 15).

The parties' working relationship expanded into the pharmaceutical data industry when, in November 2004, Plaintiff created the business entity that eventually became Medmeme LLC ("Medmeme").  (Am. Compl. ¶¶ 19-20).  At Defendant's behest, Plaintiff formed a limited liability company in Delaware, for which Defendant's wife was listed as the sole member, and agreed to work with Defendant at the business.  (*Id.*).  In exchange for Plaintiff's efforts, Defendant offered Plaintiff a four percent equity stake in Medmeme.  (*Id.* at ¶ 19).

In December 2004, Defendant filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York.  (Am. Compl. ¶ 16; *see also* Bankruptcy Petition).  In the Bankruptcy Petition, Defendant sought relief from liabilities in excess of $3 million, including "personal loan[s]" from two individual creditors totaling $307,300.  (Am. Compl. ¶¶ 16-17; *see also* Bankruptcy Petition).  Defendant did not list Plaintiff as a creditor or reference

3

his debt to Plaintiff anywhere in the Bankruptcy Petition.  (Am. Compl. ¶ 17).
At some point thereafter, Defendant instructed Plaintiff to obtain a line of credit
for Medmeme in the amount of $25,000 in order to avoid any connection to
Defendant's bankruptcy application.  (*Id.* at ¶ 20).  Plaintiff obtained the credit
line and became the guarantor of various credit cards, mobile phones, utilities
and other facilities connected to Medmeme's business and the business of an
affiliated entity known as Pharmaspectra LLC.  (*Id.*).[2]  Defendant received a
final order of discharge from the Bankruptcy Court on January 20, 2006.  (*Id.*
at ¶ 21).

Plaintiff worked for Medmeme from its creation in November 2004 until
the sale of its assets in October 2019.  (Am. Compl. ¶ 22).  During this time,
Plaintiff often raised with Defendant that the loan remained outstanding and
was accruing interest.  (*Id.*).  Defendant continually assured Plaintiff that the
debt would be repaid as soon as Medmeme became profitable.  (*Id.*).

Despite its age, Defendant acknowledged the debt by making several
payments to reduce it.  On October 15, 2016, Defendant made a $90,000
payment to Plaintiff in the form of a check drawn from Medmeme's Bank of
America account, with the word "Loan" written on the check's memo line.  (Am.
Compl. ¶ 23; *see also id.* at ¶ 26 (observing that Defendant "uses Medmeme to

---

[2]     Plaintiff alleges that the facts that (i) Defendant advised Plaintiff that earlier plans to sell
the Ibex Telecom entity had been foiled because of outstanding debts to vendors and
(ii) Plaintiff saw numerous requests for payment from these vendors; along with (iii) the
manner in which Defendant referred to the bankruptcy, "provided [Plaintiff] the clear
impression that Ibex Telecom sought protection and not [Defendant] individually."  (Am.
Compl. ¶¶ 18, 20).

pay for his individual obligations")).  Plaintiff alleges that "[t]he loan's accruing interest is calculated at 10% per annum with the interest compounded from the payment date of the [D]efendant's loan ($100,000) in April 2003 going forward."  (*Id.* at ¶ 23).  Plaintiff calculates that the interest that accumulated during the more than thirteen years between April 2003 and Defendant's first partial payment in October 2016 brought Defendant's total debt to $345,227.12.  (*Id.* at ¶ 23).  According to Plaintiff, the parties met and resolved the matter on January 18, 2018, agreeing orally that Defendant's "overall and final debt" to Plaintiff totaled $300,000.  (*Id.* at ¶ 24).  That same day, Defendant made a second payment to Plaintiff in the amount of $50,000, again drawn on Medmeme's Bank of America account, and again with the word "Loan" written on the memo line.  (*Id.* at ¶ 25).

Since Defendant's second payment, Plaintiff has repeatedly contacted Defendant by email to arrange repayment of the $250,000 balance.  (Am. Compl. ¶¶ 32 (email dated October 14, 2019), 35 (email dated November 19, 2019), 36 (email dated November 26, 2019), 38 (email dated December 16, 2019), 39 (email dated December 20, 2019)).  Defendant responded to some of these emails with assurances that he would "calculate all this and figure out the rest of the payments," and that he would direct his accountants "to finalize the numbers."  (*Id.* at ¶¶ 33, 35, 37).[3]  At no point did Defendant state, orally

---

[3]    As Defendant rightly points out (*see* Def. Br. 2-3; Naithani Decl., Ex. C), Plaintiff's quotation from Defendant's email of October 30, 2019, is selective to the point of being misleading.  The Court expects Plaintiff and his counsel to be more careful in future submissions.

or in writing, that he owes no money to Plaintiff. (*Id.* at ¶ 40). Plaintiff alleges that as of January 29, 2021 (the date on which the Amended Complaint was filed), Defendant's remaining debt to Plaintiff totaled $250,000. (*Id.* at ¶ 25).

## B.   Procedural Background

Plaintiff filed the Complaint in this case on October 14, 2020. (Dkt. # 1). On November 23, 2020, Defendant filed a pre-motion letter stating that he intended to file a motion to dismiss the Complaint and requesting a conference to discuss his anticipated motion. (Dkt. #6). Plaintiff filed his opposition to Defendant's pre-motion letter on December 2, 2020. (Dkt. #8). The following day, the Court granted Defendant's request for a conference and stated that it would discuss Defendant's anticipated motion at the initial pretrial conference scheduled for December 16, 2020. (Dkt. #9).

At the initial pretrial conference, the Court set a briefing schedule for Defendant's motion to dismiss. (*See* Minute Entry for December 16, 2020). This briefing schedule afforded Plaintiff an opportunity to amend his pleadings (*id.*), and Plaintiff filed the Amended Complaint, the operative pleading in this action, on January 29, 2021 (Dkt. #12). Defendant filed his motion to dismiss on March 1, 2021. (Dkt. #13-17).[4] Plaintiff filed his opposition brief and supporting papers on April 5, 2021. (Dkt. #18-22). Defendant filed his reply on April 16, 2021. (Dkt. #19). Accordingly, Defendant's motion is fully briefed and ripe for decision.

---

[4]   Plaintiff refiled his moving papers on March 11, 2021, in order to correct a docketing error. (Dkt. #14-17).

**DISCUSSION**

**A.    Applicable Law**

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure
12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s]

favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life

Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation

omitted).  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v.

*Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not

akin to a 'probability requirement' … it asks for more than a sheer possibility

that a defendant has acted unlawfully."  *Id.*  Toward that end, a plaintiff must

provide more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (quoting

*Twombly*, 550 U.S. at 557).

**2.    Documents That May Be Considered in Resolving Rule 12(b)(6)
Motions**

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review

only a narrow universe of materials."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559

7

(2d Cir. 2016).  This narrow universe includes "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint.  *Id.* (internal citation omitted).  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."  *Id.* (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Both parties have submitted additional documents with their memoranda of law.  Defendant, in particular, includes two release agreements signed by Plaintiff in October 2019 that, Defendant claims, release him from liability.  (Def. Br. 13-14; Naithani Decl., Ex. A-B).  Courts in this Circuit have not been perfectly clear or consistent in admitting such documents in the context of Rule 12(b)(6) motions.  *See, e.g.*, *Gallo* v. *Inter-Con Sec. Sys. Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *1 n.2, *3 n.3 (S.D.N.Y. Sept. 1, 2021) (admitting settlement agreement referenced in the complaint, but not considering factual assertions offered for context); *Abdou* v. *Mahany*, No. 19 Civ. 1824 (PAE), 2021 WL 2650069, at *1 n.1 (S.D.N.Y. June 28, 2021) (allowing settlement agreement where pleading relied on its terms and effect, and where agreement was clearly before plaintiff at time of drafting the pleading); *Trundle & Co. Pension Plan* v. *Emanuel*, No. 18 Civ. 7290 (ER), 2019 WL 4735380, at *6-7 & n.4 (S.D.N.Y. Sept. 27, 2019) (declining to consider release, and distinguishing other cases where similar documents were considered: "However, in these cases, the complaint, its attachments, or its

referenced documents incorporated the releases.  Such is not the case here.");
*Pure Diets India Ltd.* v. *Genco*, No. 18 Civ. 3086 (VEC), 2019 WL 428834, at *9-
10 (S.D.N.Y. Feb. 4, 2019) ("To the extent Genco means to suggest that all or
part of this action must be dismissed under Rule 12(b)(6) in light of a
settlement between Pure Diets India and WCS, Genco has submitted no
judicially noticeable materials evidencing such a settlement or demonstrating a
risk of double recovery that would foreclose any of Plaintiffs' claims as a matter
of law."); *Judd Burstein, P.C.* v. *Long*, No. 15 Civ. 5295 (KPF), 2018 WL
6067226, at *7 (S.D.N.Y. Nov. 20, 2018) (declining to consider settlement
agreement that was neither mentioned nor implicated by defendant's
counterclaims), *aff'd*, 797 F. App'x 585 (2d Cir. 2019) (summary order).

On this point, the Second Circuit has cautioned district judges to be
mindful of litigants who cherry-pick among relevant documents, and for this
reason has permitted district courts to consider other relevant documents that
are fairly implicated by a plaintiff's claims.  *See, e.g., L-7 Designs, Inc.* v. *Old
Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (concluding that a plaintiff's
"failure to include matters of which as pleaders they had notice and which were
integral to their claim — and that they apparently most wanted to avoid — may
not serve as a means of forestalling the district court's decision on a [Rule]
12(b)(6) motion" (quotations, alterations and citation omitted)); *Glob. Network
Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006) ("In
most instances where this exception [permitting district courts to consider
extrinsic materials] is recognized, the incorporated material is a contract or

other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason — usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim — was not attached to the complaint." (collecting cases)); *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (concluding that district court could have considered certain documents that "plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit.  It did not lack notice of those documents; these papers were integral to its complaint.").

On the unique facts of these case, the Court declines to consider the two releases at this stage of the litigation.  Plaintiff contests, with varying degrees of success, whether either release applies to the claims raised in this case.  (*See* Pl. Opp. 14-16).  He observes that the first, captioned "Confidential Settlement Agreement and General Release," is between himself and Pharmaspectra/Medmeme, and not with Defendant individually.  (*See id.*; Naithani Decl., Ex. A).  That is true, but the release purports to include "past and present directors, officers, employees and anyone acting for" either entity, which potentially includes Defendant.  (Naithani Decl., Ex. A at 1).  Plaintiff has a stronger argument with the scope of the release, which specifies claims regarding the releasor's employment, but then adds a general "or any other matter."  (*Id.*).  Courts interpreting New York law have concluded that

> [w]here, as here, [a] release ... contain[s] specific recitals as to the claims being released, and yet conclude[s] with an omnibus clause to the effect that the releasor

10

> releases and discharges all claims and demands
> whatsoever which he [or she] ... may have against the
> releasee ..., the courts have often applied the rule of
> *ejusdem generis*, and held that the general words of a
> release are limited by the recital of a particular claim.

*Camperlino* v. *Bargabos*, 946 N.Y.S.2d 814, 816 (4th Dep't 2012) (internal
quotation marks and citations omitted).  On this record, the Court cannot
conclude with any degree of confidence that the first release is implicated by
Plaintiff's complaint.

The second release, captioned simply "Release" and dated October 4,
2019, seems more promising.  (Naithani Decl., Ex. B).  Plaintiff and Defendant
are specifically listed among the parties to the release, and Plaintiff appears in
this document to release Defendant from "any claims, liabilities, or obligations"
in exchange for $1,100.  (*Id.* at 1).  And in the Court's estimation, Plaintiff's
argument in opposition — that to credit Defendant's claim would be
tantamount to "indulg[ing in] fantasy" (Pl. Opp. 15-16) — doth protest too
much.  Ultimately, however, the Court is unwilling to consider this document
either, principally because Defendant, in his post-October 2019 exchanges with
Plaintiff, does not appear to cite the release as a reason why further repayment
was not forthcoming.  (*See, e.g.*, Naithani Decl., Ex. C; Barshay Decl., Ex. 12,
14, 16).[5]

---

[5]     For analogous reasons, the Court will not consider the various materials and arguments
submitted by the parties on the issue of whether Defendant's personal bankruptcy
operated as a discharge of Defendant's debt to Plaintiff.  (*See* Def. Br. 14-15).  Plaintiff's
Amended Complaint offers various reasons why Plaintiff understood the proceedings to
be corporate rather than individual.  *See supra* at note 2.  Accepting those allegations
as true, as the Court must at this stage, the Court cannot conclude that Plaintiff had
constructive or inquiry notice of Defendant's bankruptcy.

**B.     The Court Grants Defendant's Motion to Dismiss**

Plaintiff asserts three causes of action against Defendant for: (i) breach of contract; (ii) breach of fiduciary duty; and (iii) unjust enrichment.  As discussed below, the Court dismisses all of Plaintiff's claims.

**1.     Breach of Contract**

The Court begins with Plaintiff's breach of contract claim. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege [i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages." *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Frye* v. *Lagerstrom*, No. 20-3134, 2021 WL 4022695, at *4 (2d Cir. Sept. 3, 2021) (summary order).[6]

Plaintiff alleges that Defendant breached an oral agreement that was ostensibly formed on or about April 3, 2003, when Defendant agreed to repay Plaintiff for the entire amount of the settled loan plus interest.  (Am. Compl. ¶ 14).  Defendant counters that Plaintiff has failed to allege the existence of any binding agreement and that, even assuming such an agreement did exist, Plaintiff has failed to allege either a breach of the agreement or damages stemming from any alleged breach.  (Def. Br. 16-19).  While Plaintiff has

---

[6]     The parties do not dispute that New York law applies in this case.  The parties' "implied consent ... is sufficient to establish choice of law."  *Krumme* v. *Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also Valentini* v. *Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law.").  Accordingly, the Court applies New York law to each of Plaintiff's claims.

plausibly alleged the existence of a binding oral agreement, the Court finds that

he has failed to plead a breach of that agreement.  The Court will first address

the issue of contract formation and then turn to the issue of breach.

### a.    The Formation of the Oral Agreement

"Under New York law, parties are free to enter into a binding contract

without memorializing their agreement in a fully executed document."  *Winston*

v. *Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  "In any given case it is

the intent of the parties that will determine the time of contract formation."  *Id.*

The Second Circuit instructs that

> [t]o determine if parties intend to be bound by an oral
> contract, "[t]he court is to consider [i] whether there has
> been an express reservation of the right not to be bound
> in the absence of a writing; [ii] whether there has been
> partial performance of the contract; [iii] whether all of
> the terms of the alleged contract have been agreed
> upon; and [iv] whether the agreement at issue is the
> type of contract that is usually committed to writing."

*Acun* v. *Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 554 (2d Cir.

2021) (summary order) (quoting *Winston*, 777 F.2d at 80).  "No single factor is

decisive, but each provides significant guidance."  *Id.* (quoting *Ciaramella* v.

*Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997)).  As set forth

below, application of the *Winston* factors supports the parties' intent to be

bound by an oral contract in the circumstances alleged in the Amended

Complaint.

The first *Winston* factor, express reservation of the right not to be bound

in the absence of a writing, weighs decisively in favor of enforcing the Oral

Agreement.  The Amended Complaint suggests that Defendant orally promised

to pay Plaintiff back with interest (*see* Am. Compl. ¶ 14), and contains no indication that the parties intended this promise to be conditional on the execution of a written instrument.

The second *Winston* factor, "partial performance," also weighs strongly in favor of finding a binding agreement. "Partial performance favors enforcement when 'one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement.'" *Acun*, 852 F. App'x at 554 (quoting *Ciaramella*, 131 F.3d at 325). The Amended Complaint clearly alleges partial performance of the contract. As an initial matter, Plaintiff alleges that he paid the Lenders the $100,000 in satisfaction of the loan balance owed by Defendant, and that Defendant agreed in turn to pay Plaintiff this amount plus interest. (Am. Compl. ¶¶ 13-14). Most importantly, Plaintiff alleges that Defendant made two payments to Plaintiff in furtherance of his obligations under this agreement: the first on October 15, 2016, in the amount of $90,000; and the second on January 18, 2018, in the amount of $50,000. (*Id.* at ¶¶ 23, 25). That Defendant has made efforts to partially satisfy his obligations under the terms of the alleged agreement stands as strong evidence in favor of the existence of this agreement.

The third *Winston* factor, "whether all of the terms of the alleged contract have been agreed upon," weighs against enforcement of the Oral Agreement. The Second Circuit has articulated the relevant inquiry on this factor as "whether there was literally nothing left to negotiate." *Attestor Value Master Fund* v. *Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) (per curiam)

14

(quoting *Winston*, 777 F.2d at 82) (internal quotations omitted).  Notably, the

Amended Complaint indicates that certain essential terms of the loan were

missing from the Oral Agreement.  "[U]nder New York law, a term is essential if

it seriously affects the rights and obligations of the parties."  *Morelli* v. *Alters*,

No. 19 Civ. 10707 (GHW), 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020)

(internal quotation marks omitted).  Essential terms of a loan agreement

include an interest rate, a maturity date, and a schedule for payments.  *See*

*L.K. Station Grp., LLC* v. *Quantek Media, LLC*, 879 N.Y.S. 2d 112, 116 (1st Dep't

2009) (finding an agreement unenforceable where it did not contain "the

essential terms of a loan, such as the interest rate or maturity date"); *see also*

*Gianascio* v. *Giordano*, No. 99 Civ. 1796 (GBD), 2003 WL 22999454 (S.D.N.Y.

Dec. 19, 2003) (finding no loan agreement had been reached where the "loan

period was not particularized, there was no schedule for payments, and an

interest rate was not specified").  Here, Plaintiff has failed to allege several

essential terms of the loan agreement, including the loan period, time for

performance, or interest rate.[7]

---

[7]     The Amended Complaint states that "[t]he loan's accruing interest is calculated at 10%
per annum with the interest compounded from ... April 2003 going forward," which "is
justified as a fair market rate when considering the loan is unsecured and without any
collateral to satisfy its payment in case of [D]efendant's death, incapacity[,] or default."
(Am. Compl. ¶ 23).  However, Plaintiff has not plausibly alleged that he and Defendant
actually agreed upon that interest rate as part of the Oral Agreement.  To the contrary,
the Amended Complaint suggests that this was *not* the agreed-upon interest rate
(*compare id.* at ¶ 23 (applying the ten percent interest rate to calculate the final debt as
$345,227.12), *with id.* at ¶ 24 (describing a verbal agreement between the parties that
the final debt totaled $300,000)).  Further, the Amended Complaint suggests that
Defendant disagreed with Plaintiff's calculation of the debt owed, because when
confronted with Plaintiff's calculation, Defendant responded that an accountant would
be needed to "do the final calculations" and to "finalize the numbers."  (*Id.* at ¶¶ 33, 37).

In his reply submission, Defendant clarifies that his pleading sufficiency argument was
*not* that the Oral Agreement was unenforceable because it was oral, but that it was

The fourth and final *Winston* factor, "whether the agreement at issue is the type of contract that is usually committed to writing," is often considered in terms of "whether in the relevant business community, it is customary to accord binding force to the type of informal or preliminary agreement at issue." *Tchrs. Ins. & Annuity Ass'n of Am.* v. *Trib. Co.*, 670 F. Supp. 491, 503 (S.D.N.Y. 1987). The Court declines to analyze the fourth factor at this stage because "[c]ourts in this district have recognized that 'it is nearly impossible to determine at the motion to dismiss stage whether a more formal contract would normally be expected under prevailing industry conditions.'" *Bloomfield Inv. Res. Corp.* v. *Daniloff*, No. 17 Civ. 4181 (VM), 2021 WL 1611951, at *6 (S.D.N.Y. Apr. 26, 2021), *reconsideration denied*, 2021 WL 2310446 (S.D.N.Y. June 7, 2021) (quoting *Sawabeh Info. Servs. Co.* v. *Brody*, 832 F. Supp. 2d 280, 307-08 (S.D.N.Y. 2011)); *see also FCOF UB Sec. LLC* v. *MorEquity, Inc.*, 663 F. Supp. 2d 224, 231 (S.D.N.Y. 2009) ("[W]hether it is customary to accord binding force to a certain type of preliminary agreement is a question of fact[.]").

In sum, the two *Winston* factors that weigh in Plaintiff's favor — the lack of an express reservation to be bound and the parties' partial performance of the agreement — persuade the Court that Plaintiff has alleged adequately that the parties intended to be bound by the Oral Agreement.

---

unenforceable because Plaintiff had failed to plead the essential terms of the parties' agreement. (Def. Reply 7). The Court has considered this argument, but ultimately dismisses the Amended Complaint based on what might be considered the mirror image of that argument, *i.e.*, that accepting the terms of the Oral Agreement to be those alleged by Plaintiff, Plaintiff has failed to allege a breach.

### b.    Breach of the Oral Agreement

While the Amended Complaint plausibly alleges that the parties intended to bind themselves to the Oral Agreement, Plaintiff has not plausibly alleged that Defendant breached this agreement.  "It is well settled law that a contract is not breached until the time set for performance has expired."  *See Rachmani Corp.* v. *9 East 96th Street Apartment Corp.*, 629 N.Y.S.2d 382, 384 (1st Dep't 1995).  As discussed above, nowhere in the Amended Complaint does Plaintiff allege that he and Defendant agreed upon a time for performance of the Oral Agreement.  It is therefore impossible to determine at what point, during the 17 years between the date of the loan and the filing of this action, Defendant's alleged failure to repay the loan shifted from being consistent with the terms of the Oral Agreement to being a breach of that agreement.  Nor has Plaintiff alleged anticipatory repudiation, which occurs "when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty."  *Lucente* v. *Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Put differently, not only has Plaintiff not alleged that the time for performance of the Oral Agreement has expired, but he has specifically pleaded that Defendant has *not* declared an intention to flout his contractual duty.  (Am. Compl. ¶ 40 ("At no time has [D]efendant written or orally stated to [P]laintiff that he rejects [P]laintiff's claim for re-payment and that he owes him nothing.")).

Because Plaintiff has failed to plead any breach of the Oral Agreement, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of

contract.  The Court notes, however, that Defendant has not convinced the Court that Plaintiff's breach of contract claim would have been time-barred if adequately pleaded.  (*See* Def. Br. 15-16).  Under New York law, the statute of limitations on a claim for breach of contract is six years.  N.Y. C.P.L.R. § 203(a).  But this is not the end of the matter, as under New York law, "a written acknowledgement of a contractual obligation made subsequent to the execution of the contract may effectively toll the statute of limitations for a breach of contract claim." *Faulkner* v. *Arista Recs. LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (quoting N.Y. Gen. Oblig. Law § 17-101).[8]  The critical determination is "whether the acknowledgement imports an intention to pay." *Id.* at 478-79 (quoting *In re Brill*, 318 B.R. 49, 54 (Bankr. S.D.N.Y. 2004)); *see also Banco Do Brasil S.A.* v. *State of Antigua and Barbuda*, 707 N.Y.S.2d 151, 152 (1st Dep't 2000) ("[A]n intention to pay ... is all that need be shown in order to satisfy section 17-101").  Such a written acknowledgment "need not specify the precise amount owed to effectively toll the statute of limitations." *Faulkner*, 602 F. Supp. 2d at 479.  According to the Amended Complaint, Defendant sent email messages to Plaintiff as recently as November 2019 acknowledging the debt and evincing an intention to pay.  (*See* Am. Compl. ¶ 37; *see also id.* at ¶ 33 (describing an email from Defendant from October 30, 2019, evincing an

---

[8]     N.Y. Gen. Oblig. Law § 17-101 provides in relevant part that:

> An acknowledgement or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules[.]

intent to satisfy his obligation to repay Plaintiff)).  It defies common sense for a debtor to string a creditor along for over a decade, continually promising performance on a contractual obligation, only to then invoke the statute of limitations to argue that the creditor's claims are time-barred.

### 2.    Breach of Fiduciary Duty

Next, the Court addresses Plaintiff's claim that Defendant breached his fiduciary duty toward Plaintiff.  To state a breach of fiduciary duty claim under New York law, a plaintiff must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  *Watkins* v. *Harlem Center for Nursing & Rehab., LLC*, No. 20 Civ. 2919 (KPF), 2021 WL 4443968, at *9 (quoting *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).  Defendant argues that (i) Plaintiff has not pleaded a fiduciary relationship and (ii) this claim is barred by the economic loss doctrine.  (Def. Br. 19-21).  The Court concludes that Plaintiff's breach of fiduciary duty claim fails for several reasons.

*First,* Plaintiff has not pleaded a fiduciary relationship in the Amended Complaint.  As the existence of a fiduciary duty normally depends on the facts of a particular relationship, "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)."  *Abercrombie* v. *Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (citing *Better Benefits, Inc.* v. *Protective Life Ins. Co.*, No. 03 Civ. 2820 (LAP), 2004 WL 633730, at *3 (S.D.N.Y. Mar. 30, 2004)).  "However, absent an allegation of a special relationship, mere assertions of 'trust and confidence' are insufficient to

19

support a claim of a fiduciary relationship." *Id.* (citing *Freedman* v. *Pearlman*, 706 N.Y.S. 2d 405, 409 (1st Dep't 2000)); *see also Holloway* v. *King*, 361 F. Supp. 2d 351, 361 (S.D.N.Y 2005) ("The conclusory allegations of a 'special relationship,' [and] 'complete trust and confidence' … [do] not transform an ordinary commercial relationship into a fiduciary relationship."). "Thus, for example, the fact that one party trusts the other is insufficient to create a fiduciary relationship." *Abercrombie,* 438 F. Supp. 2d at 274 (internal quotation marks and citation omitted). Plaintiff supports the existence of such a special relationship with Defendant with only generalized allegations of trust and confidence. (*See* Am. Compl. ¶ 46 ("As a result of the parties' long term dealings where trust is reposed between them, a fiduciary relationship arose.")). Under New York law, Plaintiff's bare assertion that the parties' long-term business dealings resulted in "a great deal of trust and loyalty" are insufficient to support a claim of a fiduciary relationship. (*See id.* at ¶ 45).

*Second,* Plaintiff's claim of fiduciary breach is duplicative of his breach of contract claim. *See Blackrock Core Bond Portfolio* v. *U.S. Bank Nat'l Ass'n,* 165 F. Supp. 3d 80, 105 (S.D.N.Y. 2016) ("To the extent the breach of fiduciary duty claim simply repeats the breach of contract claim, it fails."). Plaintiff's claim for breach of fiduciary duty expressly incorporates by reference his breach of contract claim, with the addition of three paragraphs. (*See* Am. Compl. ¶¶ 44-47). The first additional paragraph alleges that the parties' long-term business dealings resulted in a "great deal of trust and loyalty." (*Id.* at ¶ 45). The second alleges that Plaintiff's trust in Defendant gave rise to a fiduciary

20

relationship, and that Defendant's failure to repay Plaintiff resulted in a breach of Defendant's fiduciary duty toward Plaintiff.  (*Id.* at ¶ 46).  The third paragraph seeks judgment in the sum of the contract damages plus any further relief the Court deems just and proper, such as attorneys' fees and court costs.  (*Id.* at ¶ 47).  Plaintiff has not alleged that Defendant violated a legal duty separate from a contractual duty to perform.  *See Clark-Fitzpatrick, Inc.* v. *Long Isl. Rail Road Co.*, 70 N.Y.2d 382, 389-90 (1987) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

*Third*, and finally, even if Plaintiff had pleaded a fiduciary relationship between the parties, the damages Plaintiff alleges in connection with the alleged breach of fiduciary duty arise entirely from Defendant's obligations under the Oral Agreement (*i.e.*, to repay Plaintiff).  Recovery on this claim is barred by the economic loss doctrine, which establishes that "a contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding the use of familiar tort language in its pleadings."  *Blackrock*, 165 F. Supp. 3d at 106 (quoting *17 Vista Fee Assocs.* v. *Tchrs. Ins. & Annuity Ass'n of Am.*, 639 N.Y.S. 2d 554, 569 (1st Dep't 1999)).  The "injury[,] the manner in which the injury occurred[,] and the damages sought" persuade the Court that "[Plaintiff's] remedy lies in the enforcement of contract obligations, and are barred by the economic loss doctrine."  *Blackrock*, 165 F. Supp. 3d at 106 (internal citations and punctuation omitted).  For all of these reasons, the

Court grants Defendant's motion to dismiss Plaintiff's claim for breach of fiduciary duty.

### 3.      Unjust Enrichment

Finally, the Court addresses Plaintiff's claim for unjust enrichment, which was pleaded in the alternative to Plaintiff's breach of contract and breach of fiduciary duty claims.  Plaintiff alleges that Defendant's failure to repay him resulted in Defendant's unjust enrichment at Plaintiff's expense because he has thus far avoided payment of a fair market rate of interest on the initial $100,000 loan.  (Am. Compl. ¶ 49).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Poller* v. *BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "[U]njust enrichment constitutes a quasi-contract viable only in the absence of an enforceable agreement between the parties governing the subject matter of the dispute." *Poller*, 974 F. Supp. 2d at 236 (internal quotation marks omitted).  As the Court has already found that Plaintiff has pleaded an enforceable agreement between the parties, Plaintiff's claim for unjust enrichment necessarily fails.  The Court accordingly grants Defendant's motion to dismiss Plaintiff's claim for unjust enrichment.

## C.     The Court Will Consider an Application for Leave to Amend in Part

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). However, it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019), and such leave may be denied if the amendment would be futile, *see Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss").

The Court finds that any amendment to Plaintiff's claims for (i) breach of fiduciary duty or (ii) unjust enrichment would be futile.  By contrast, the Court finds that Plaintiff might be able to state a claim for breach of contract if he could plead additional facts that would warrant a finding that (i) the time for Defendant's performance has passed, or (ii) Defendant has repudiated his obligations under the agreement.  However, any such amended pleading must be more faithful than the Amended Complaint was to the documents identified by the parties in the course of this motion, including in particular the two releases discussed above.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Clerk of Court is directed to terminate the pending motion at docket number 14.

The parties are hereby ORDERED to appear for a telephone conference to discuss next steps in this case, including in particular any application from Plaintiff for leave to amend his complaint a second time, on **Tuesday**, **February 15, 2022**, at **2:00 p.m**.  The dial-in information is as follows:  At 2:00 p.m., the parties shall call (888) 363-4749 and enter access code 5123533.  Please note, the conference will not be available prior to 2:00 p.m.

Plaintiff is directed to advise the Court and Defendant of his position concerning further amendment of his pleadings by letter submitted on or before **February 8, 2022**; if Plaintiff intends to seek leave to amend, he should provide an outline of his proposed amendments in that letter.

SO ORDERED.

Dated:      January 18, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

24